646 So.2d 601 (1994)
Kenneth A. BOZEMAN and Linda R. Bozeman
v.
CENTRAL BANK OF THE SOUTH.
1930327.
Supreme Court of Alabama.
August 19, 1994.
*602 Richard Jordan, Randy Myers and Benjamin L. Locklar of Richard Jordan and Randy Myers, P.C., Montgomery, for appellants.
Sterling G. Culpepper, Jr. and Donald R. Jones, Jr. of Balch & Bingham, Montgomery, for appellee.
PER CURIAM.
Kenneth and Linda Bozeman brought an action against Central Bank of the South, alleging conversion and wantonness by Central Bank in cashing a certificate of deposit that the Bozemans had pledged as security for a business loan. The circuit court entered a summary judgment for Central Bank, and the Bozemans appeal.
On a motion for summary judgment, the court views the evidence in a light most favorable to the nonmoving party. Garris v. A & M Forest Consultants, Inc., 623 So.2d 1035 (Ala.1993). The court must resolve all reasonable doubts against the moving party. Environmental Systems, Inc. v. Rexham Corp., 624 So.2d 1379 (Ala.1993). The evidence, viewed most favorably toward the Bozemans, would support the following statement of facts.
The Bozemans executed an $18,000 promissory note in 1989 to Central Bank, with payments due on the 17th day of each month. The debt was secured by a certificate of deposit ("CD"). The Bozemans frequently made late payments, which Central Bank accepted; they also made some advance payments to reduce the principal balance. Central Bank asserts that on March 23, 1992, it mailed the Bozemans a letter informing them that their account was delinquent, their payments being two months behind, and informing them that the bank would cash the CD and apply the proceeds to pay the loan if the account was not brought current by March 27. The Bozemans deny receiving any such letter. On March 27, Howard Wills, Central Bank's branch manager, telephoned Mr. Bozeman and told him that he would not declare the loan in default if payment was made before April 1. Mr. Bozeman mailed a check in the amount of the February and March payments, and Central Bank received *603 the check on March 31 and posted it on that date.
Mr. Bozeman mailed the check to Central Bank's headquarters in Birmingham. On the morning of March 31, Mr. Wills telephoned the Birmingham office and was told that no payment had been received. He telephoned for the Bozemans and left a message for them. Mrs. Bozeman received the message about noon and returned the call. Mr. Wills told her to make the past-due monthly payments plus the interest that had accrued to that date. She spoke to Mr. Bozeman while Mr. Wills was on the telephone, and Mr. Bozeman told her that he had mailed the payments. Mrs. Bozeman relayed this information to Mr. Wills, told him that she would make the loan payments current by 2:00 o'clock, as he demanded, and asked him not to cash the CD.
Mrs. Bozeman wrote a check for $65.68, the difference between the amount Mr. Wills was demanding and the amount Mr. Bozeman had already paid. She deposited the check at the drive-through window and asked the teller to give it to Mr. Wills. She said that she did not include a note explaining the amount of the check because she had told Mr. Wills on the telephone that Mr. Bozeman had already made the two monthly payments. When Mr. Wills received this check, he interpreted it as being the only payment made; he cashed the CD, and paid the balance of the loan. On April 3, the Bozemans received a letter from Central Bank informing them that the bank had cashed the CD and paid the loan, and returning the remaining proceeds of the CD. Mrs. Bozeman telephoned Mr. Wills, who took the position that the $65.68 check had not complied with his instructions and told her that nothing could be done about the situation. Mrs. Bozeman telephoned Central Bank's Birmingham office and was told that the payments had been received and posted on March 31. She telephoned Mr. Wills again, but he told her that there was nothing else he could do.
The Bozemans also submitted evidence that they had made the February payment but that Central Bank had erroneously applied it to a credit card account instead of to this loan account. Thus, the account may have been past due by only one payment, and that by less than two weeks. It is undisputed that the two payments Mr. Wills had demanded from Mr. Bozeman on March 27 were paid by March 31. Central Bank contends that Mr. Wills was unaware of these payments because they were posted by computer at night after the bank had closed. That being the case, a jury could infer that Mr. Wills wrongfully failed to wait until April 1 to determine whether the payments had been timely made, especially because Mrs. Bozeman relayed to him the information from Mr. Bozeman that he had sent the payments.
"To constitute conversion, there must be a wrongful taking or a wrongful detention or interference, or an illegal assumption of ownership, or an illegal use or misuse of another's property." Covington v. Exxon Co., U.S.A., 551 So.2d 935, 938 (Ala.1989). A jury could conclude that Central Bank converted the Bozemans' property when it cashed the CD. Friendly Credit Union v. Campbell, 579 So.2d 1288 (Ala.1991); Chrysler Credit Corp. v. Turner, 553 So.2d 64 (Ala.1989); Ott v. Fox, 362 So.2d 836 (Ala.1978). Therefore, the circuit court erred in entering the summary judgment on the conversion claim.
"Wantonness" is statutorily defined as "Conduct which is carried on with a reckless or conscious disregard of the rights or safety of others." Ala.Code 1975, § 6-11-20(b)(3).
"`Wantonness' has been defined by the Court as the conscious doing of some act or the omission of some duty, while knowing of the existing conditions and being conscious that, from doing or omitting to do an act, injury will likely or probably result. McDougle v. Shaddrix, 534 So.2d 228 (Ala.1988)."
Stone v. Southland Nat'l Ins. Corp., 589 So.2d 1289, 1292 (Ala.1991). "Wantonness is the doing of some act or omission with reckless indifference to the knowledge that such act or omission will likely or probably result in injury." Bishop v. Poore, 475 So.2d 486, 487 (Ala.1985); Anderson v. Moore Coal Co., 567 So.2d 1314, 1317 (Ala.1990). The Bozemans presented substantial evidence of wantonness; *604 that evidence created a jury question. Thus, the circuit court erred in entering the summary judgment on the wantonness claim.
We agree with the Bozemans' contention that Central Bank's defenses in regard to damages were not timely presented. Therefore, the judgment is not due to be affirmed on the basis of any such defense.
REVERSED AND REMANDED.
HORNSBY, C.J., and ALMON, SHORES, INGRAM and COOK, JJ., concur.
MADDOX, J., concurs in part and dissents in part.
HOUSTON, J., recused.
MADDOX, Justice (concurring in part; dissenting in part).
I concur in the opinion in all aspects except that I disagree with the holding that the trial judge improperly entered the summary judgment as to the wantonness count.